UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>REGINALD CURTIS CARTER,<br><br>*Defendant.* | Case No. 00-CR-252-RCL-3 |

### MEMORANDUM OPINION

Having served over half of his ten-year term of supervised release, defendant Reginald Carter moves *pro se* for early termination pursuant to 18 U.S.C. § 3583(e)(1). Def.'s Mot., ECF No. 1982. The government opposes Mr. Carter's motion. *See* Gov't Opp'n, ECF No. 1986. The U.S. Probation Office recommends that the Court grant Mr. Carter's motion. *See* Prob. Mem., ECF No. 1984. Upon consideration of the parties' submissions, the entire record, and the applicable law, this Court will **GRANT** Mr. Carter's motion for early termination of supervised release.

### I.   BACKGROUND

*Pro se* defendant Reginald Carter was convicted at trial in 2002 of charges related to the possession and distribution of heroin and cocaine, as well as the unlawful possession of a firearm. *See* ECF No. 1182. Under then-applicable law, Mr. Carter was sentenced to life in prison in 2004 by Judge Ricardo M. Urbina. ECF No. 1550. In 2007, in light of *United States v. Coles*, 403 F.3d 764 (D.C. Cir 2005), and *United States v. Booker*, 543 U.S. 220 (2005), Mr. Carter's life sentence was vacated and he was resentenced to 260 months in prison, followed by ten years of supervised release. *See* ECF No. 1700. In 2017, because of amendments to the sentencing guidelines, this Court further reduced Mr. Carter's prison term to 240 months in prison followed by ten years of

1

supervised release pursuant to 18 U.S.C. § 3582(c)(2).[1] *See* ECF No. 1948. Mr. Carter was released from prison on January 9, 2018. His ten-year term of supervised release began on that day. ECF No. 1976.

Mr. Carter moved for early termination of supervised release in both October 2020 and July 2021. ECF Nos. 1974 and 1976. The Court denied both motions. ECF Nos. 1974 and 1981. The Court terminated Mr. Carter's 2020 motion because it did not contain attachments that were referenced in that motion. ECF No. 1974. Mr. Carter's 2021 motion for early termination came just three and a half years into his term of supervised release and contained no information on his employment or involvement in the community. *See* ECF No. 1979. Further, both the government and the U.S. Probation Office recommended the Court deny that motion. ECF Nos. 1979 and 1980. On June 7, 2023, Mr. Carter moved once again for early termination of his supervised release. ECF No. 1982. He has now served over five and a half years of his ten-year term of supervised release. Moreover, this time, Mr. Carter's motion is supported by the U.S. Probation Office. ECF No. 1984. The government agrees with the U.S. Probation Office that Mr. Carter has flawlessly complied with the terms of his supervised release. *See* ECF No. 1986, at 3 (acknowledging "that the defendant has incurred no violations of his release conditions"). Indeed, the government "commends the defendant's commitment to adhering to the conditions of his probation, and obtaining and maintaining employment." *Id.* However, the government argues that the seriousness of Mr. Carter's past actions weighs against early termination of supervised release. *Id.* at 3–4.

---

[1] This Court granted an unopposed motion to reduce Mr. Carter's sentence. ECF No. 1948. That motion contained a letter from Judge Ricardo Urbina requesting a sentence reduction for Mr. Carter and speaking favorably to Mr. Carter's institutional history, education, occupational training, and community ties. ECF No. 1945.

## II.   LEGAL STANDARD

Motions for early termination of supervised release are governed by 18 U.S.C. § 3583(e)(1). That section permits a court to terminate a term of supervised release early only if the following three requirements are met: (1) the defendant has served more than one year of supervised release; (2) early termination is both "warranted by the conduct of the defendant" and in "the interest of justice," 18 U.S.C. § 3583(e)(1); and (3) analysis of certain factors set forth in 18 U.S.C. § 3553(a) supports the early termination. The specific § 3553(a) factors that a court must consider when deciding a motion for early termination are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
> > \*\*\*
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant;
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> \*\*\*
>
> (4) the kinds of sentence and the sentencing range established for
>
> > (A) the applicable category of the offense committed by the applicable category of defendant as set forth in the [U.S. Sentencing Guidelines] . . . in effect on the date the defendant is sentenced;
>
> (5) any pertinent policy statement —
>
> > (A) issued by the Sentencing Commission pursuant to [28 U.S.C. § 994(a)(2)] subject to any amendments made to such a policy statement by act of Congress (regardless of

3

> whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under [28 U.S.C. § 994(p)]); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a); *see id.* § 3583(e).

### III.   ANALYSIS

After review, the Court finds that Mr. Carter meets all three of the requisite conditions for early termination of supervised release. The Court will therefore grant his motion.

### A. Mr. Carter Has Served More Than One Year of His Supervised-Release Term

The parties agree that Mr. Carter has served more than a year of his term of supervised release. 18 U.S.C. § 3583(e)(1). *See* Def.'s Mot. at 1; Gov't Opp'n at 2. Indeed, Mr. Carter has now been under supervised release for more than five and a half years. Thus, Mr. Carter has satisfied the first statutory requirement making him eligible for early termination of supervised release.

### B. Early Termination Is Both Warranted by Mr. Carter's Conduct and in the Interest of Justice

The Court is "satisfied" by the "conduct of the defendant." 18 U.S.C. § 3583(e)(1). As the government recognizes, Mr. Carter is "doing well, maintaining employment, and [is] working as a productive member of society" and he "appears to have been successful while under supervision." Gov't Opp'n at 3. Since his release, Mr. Carter has completed the Washington D.C. Step Up program, was accepted to an electrical apprenticeship program, and has gained

4

employment as a home inspector. *See* Def.'s Mot. at 3. Mr. Carter has also informed the Court that, during the pandemic, he started a courier business that delivered COVID-19 tests and other medical supplies to hospitals, doctors, and labs. *Id.* Mr. Carter's commitment to securing technical training, gainful employment, and entrepreneurial opportunities supports his statement that he has "been a productive and self[-]motivated citizen since [he has] been home." *Id.* In contrast to his co-defendants, Mr. Carter has not had a single arrest or issue with the law in the past five and a half years, nor did he have any infractions while he was incarcerated. *See* Prob. Mem. at 2. Mr. Carter has also completed his $300 financial obligation to the Court. *Id.* Further, while the U.S. Probation Office did not support Mr. Carter in his previous motion for early termination, *see* ECF No. 1980, it now recommends that the Court grant Mr. Carter early termination. *See* Prob. Mem. at 2. For these reasons, the Court is satisfied that Mr. Carter's conduct warrants early termination of supervised release.

The Court also finds that early termination of Mr. Carter's supervised release would be "in the interest of justice." 18 U.S.C. § 3583(e)(1). The government suggests the opposite, acknowledging that "[e]arly termination may well be appropriate in this case at some point," but arguing that early termination of supervised release "is premature at this juncture . . . as [Mr. Carter] is approximately just over halfway through his period of supervised release and was convicted of serious offenses that have a dramatic impact on the community." Gov't Opp'n at 5. However, the Court's determination of what is "in the interest of justice" is guided not merely by the seriousness of Mr. Carter's past conduct, but by the totality of the circumstances. *See United States v. Hobbs*, No. 94-cr-375, ECF 110, at 11–12 (interpreting the "interest of justice" factor to require consideration of "circumstances beyond the defendant's actions alone"). Mr. Carter has demonstrated exceptional compliance with the terms of his supervised release and all evidence of

his conduct during and after incarceration weighs in favor of termination of supervised release. Early termination in this case also comports with the well-established aims of supervised release. The "congressional policy in providing for a term of supervised release . . . is to improve the odds of a successful transition from the prison to liberty." *See Johnson v. United States*, 529 U.S. 694, 708–09 (2000). Mr. Carter's superb progress indicates that the aims of his supervised release have been achieved; for that reason, the Court finds that it is "in the interest of justice" to terminate Mr. Carter's supervised release early.

### C. The Relevant 18 U.S.C. § 3553(a) Factors Support the Early Termination of Supervised Release

The Court must next consider whether early termination is consistent with the relevant 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C. § 3583(e)(1); *accord United States v. Mathis-Gardner*, 783 F.3d 1286, 1288 (D.C. Cir. 2015). On balance, the Court finds that the Section 3553(a) factors weigh in favor of an early termination.

*i. Nature and Circumstances of the Offenses*

The nature and circumstances of Mr. Carter's offenses weigh against early termination of supervised release. Mr. Carter was convicted at trial of serious narcotics and firearm charges related to his participation in a large drug operation. *See* Presentence Investigation Report ("PSR"), ECF No 1897-2, at ¶ 12. Between 1997 and 2000, Mr. Carter was a leader, organizer, manager, and controller of several heroin traffickers and couriers. *Id.* at ¶ 13. Mr. Carter supplied his associates with not only heroin, but also cutting and mixing agents to process and package the heroin. *Id.* Notably, during his initial interview with the probation officer, Mr. Carter accepted responsibility for his participation in the drug conspiracy and maintained that he only went to trial to defend himself on the charges related to the unlawful possession of a gun. *Id.* at ¶ 13.

Nonetheless, the seriousness of Mr. Carter's offenses weighs against early termination of supervised release.

      ii.    *Mr. Carter's History and Characteristics*

While Mr. Carter's criminal history does not weigh in favor of ending supervised release, his characteristics suggest that early termination is appropriate. 18 U.S.C. § 3553(a)(1). In 1993, when he was 23 years old, Mr. Carter was convicted of attempting to distribute cocaine. *Id.* at ¶ 15. This is his only prior conviction. *Id.* This conviction and one prior drug-related *arrest* from when he was 22 years old are the totality of Mr. Carter's criminal record. *Id.* Since the conclusion of his lengthy prison sentence in 2018, Mr. Carter has complied with all the terms of his release, including his change of address and firearm restriction conditions. *See* Prob. Mem. at 2. As mentioned above, Mr. Carter has also found steady employment, avoided rearrest, and completed his financial obligations to this Court. *Id.* Mr. Carter is currently on the U.S. Probation Office's low-risk caseload because he only "requires minimal supervision." *Id.* Mr. Carter's character of compliance outweighs his sparse, decades-old, criminal history. Thus, this factor weighs in favor of early termination of supervised release.

      iii.    *The Need to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crime*

The Court finds that requiring Mr. Carter to complete the remainder of his term of supervised released is not necessary to "afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)–(C). The Probation Office agrees. Prob. Mem. at 2 (noting that the level of risk posed to the community was among the factors considered in its recommendation to grant early termination). The government fails to demonstrate how Mr. Carter's supervision is necessary for deterrence or how he might be dangerous to his community upon early termination. Indeed, Mr. Carter's record through

incarceration and on supervised release—free of any incident or infraction—suggests precisely the opposite. *See* Def.'s Mot. at 16; Prob. Mem. at 2.[2] The government acknowledges that "[t]he core purpose of the supervised release at this point is to ensure that the defendant does not commit any new offenses." Gov't Opp'n at 4. Based on the information before it, the Court believes that Mr. Carter's lengthy prison sentence and half-decade of supervision has fulfilled that purpose. Like the government, this Court "commends [Mr. Carter's] commitment to adhering to the conditions of his probation, and obtaining and maintaining employment." *Id.* at 3. Mr. Carter's incarceration and supervision have afforded adequate deterrence. Given Mr. Carter's compliance with the terms of his release, the payment of his financial obligation to the Court, his steady employment, and the recommendation of the U.S. Probation Office, the Court does not have any reason to believe that Mr. Carter will reoffend. Thus, this factor weighs in Mr. Carter's favor.

    iv.    *Sentencing Range for Mr. Carter's Offenses*

The term of supervised release for Mr. Carter's offenses is usually at least ten years. *See* 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i); *see also* PSR at ¶ 78.[3] In similar cases, however, other courts in this district have allowed for early termination of supervised release. *See, e.g., United States v. Harris,* 258 F. Supp. 3d 137 (D.D.C. 2017) (granting early termination where a defendant in a drug conspiracy case had served nearly five years of his ten-year term of supervised release); *United States v. Etheridge,* 999 F. Supp. 2d 192 (D.D.C. 2013) (granting early termination once a defendant in a drug case had served just over half of his term of supervised release); *cf. United States v. Harrison,* No. 98-CR-235-RCL-5, 2021 WL 1820289 (D.D.C. May 6, 2021) (denying

---

[2] Over six years ago, Mr. Carter's prison unit team reported Mr. Carter to be a "low-risk for recidivism." Def.'s Mot. at 16.
[3] Were it not for a prior conviction obtained when Mr. Carter was just 23 years old, his supervised release term may already have ended—as the minimum term of supervised release for Mr. Carter's conviction would be five years instead of ten. 21 U.S.C. §841 (b)(1).

8

early termination in a drug case where the defendant's motion was not supported by the U.S. Probation Office). Thus, this factor weighs neither for nor against early termination.

### v. Pertinent Policy Statement

The Court is not aware of any "pertinent policy statement," so this factor has no impact on the Court's analysis. 18 U.S.C. § 3553(a)(5).

### vi. Need to Avoid Unwarranted Sentencing Disparities

Early termination of Mr. Carter's term of supervised release will not cause "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Examining this factor in light of the sentences afforded to four of Mr. Carter's codefendants—Earl Anthony Garner, Sr., Ricardo Lanier, Marquette Riley, Joseph Robert Reese—suffices to demonstrate as much.

#### a. Earl Anthony Garner, Sr.

Co-defendant Earl Anthony Garner, Sr. was a leader in the heroin distribution ring. ECF No. 1973. Mr. Garner pled guilty to three offenses: (1) Conspiracy to Distribute and Possess With Intent to Distribute Heroin and Cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(I); (2) Engaging in a Continuing Criminal Enterprise in violation of 21 U.S.C. § 1956(a)(1); and (3) Laundering Monetary Instruments in violation of 18 U.S.C. § 1956 (a)(1). ECF No. 1964. Mr. Garner had a Criminal History Category of III and was sentenced to an aggregate term of 360 months. ECF No. 1851 at 2, 9–10. Mr. Garner's outsized role in the enterprise, criminal history, and distinct charges demonstrates that granting Mr. Carter's motion for early termination would not create any *unwarranted* disparities between Mr. Carter's sentence and the sentence that Garner received.

b. Ricardo Lanier

Co-defendant Ricardo Lanier participated in the drug ring and was found guilty of (1) Conspiracy to Distribute and Possess With Intent to Distribute Heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a) and (b). ECF No. 1796. Mr. Lanier had a Criminal History Category of III and was sentenced to an aggregate term of 96 months of imprisonment and 60 months of supervised release. ECF No. 1771. Mr. Lanier's supervision began on September 5th, 2008. *Id.* He died of natural causes on March 6, 2013, before completion of his term of supervised release. ECF No. 1874. Prior to his death, Mr. Lanier incurred several arrests during his term of supervision, including charges related to sexual assault and intoxicated driving. *Id.* Mr. Lanier's distinct charges, criminal history, behavior during his supervision term, and death prior to the term's completion demonstrates that granting Mr. Carter's motion for early termination would not create any unwarranted disparities between Mr. Carter's sentence and the sentence that Lanier received.

c. Marquette Riley

Co-defendant Marquette Riley, another participant in the drug ring, was found guilty of (1) Conspiracy to Distribute and Possess With Intent to Distribute 1.2 Kilograms of Heroin in violation of § 18 U.S.C. §371. ECF No. 1823. Mr. Riley had a Criminal History Category of III and was sentenced to an aggregate term of 60 months of imprisonment and 36 months of supervised release. ECF No. 1823. Riley's supervision began on February 6, 2009. *Id.* During his term of supervision, Mr. Riley was arrested for offenses related to intoxicated driving and attempted theft, thereby violating the terms of his supervised release. *See id.* Mr. Riley's distinct charges, criminal history, and offenses under supervision, demonstrate that granting Mr. Carter's motion for early

termination would not create any unwarranted disparities between Mr. Carter's sentence and the sentence that Mr. Riley received.

### d. Joseph Robert Reese

Lastly, co-defendant Joseph Robert Reese also participated in the drug ring and was convicted of Conspiracy to Distribute and Possess with Intent to Distribute Heroin in violation of 21 U.S.C. §§846 and 841(a)(1) and (b)(1)(A) and Unlawful Possession with Intent to Distribute Heroin in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C). *United States v. Reese*, No. 00-cr-252-25, ECF No. 1894. Mr. Reese had a Criminal History Category of VI and was sentenced to an aggregate term of 60 months of imprisonment and 10 years of supervised release. *Id.* While under supervised release, Mr. Reese violated his conditions of release by failing to truthfully answer questions and follow directions of his probation officer on two different occasions. ECF No. 1890. Further, on August 08, 2014, approximately one and a half years into his term of supervised release, Mr. Reese died a natural death. ECF No. 1894, at 2. Mr. Reese's distinct charges, criminal history, violations under supervision, and death early in his term of supervision demonstrate that granting Mr. Carter's motion for early termination of supervised release would not create any unwarranted disparities between Mr. Carter's sentence and the sentence that Reese received.

Given the circumstances of the sentences imposed on these co-defendants—and the government's lack of any briefing on this factor—the Court has no reason to believe that early termination of Mr. Carter's term of supervised release will cause "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Thus, this factor weighs in favor of granting Mr. Carter's motion for early termination of supervised release.

    *vii.*    *Need to Provide Restitution*

Mr. Carter was not sentenced to pay restitution, so "the need to provide restitution to any victims of the offense" does not affect the Court's analysis. 18 U.S.C. § 3553(a)(7).

* * *

The Court finds that the relevant Section 3553(a) factors, taken together, support the early termination of supervised release. Though Mr. Carter's offenses were serious, his twenty-year incarceration sentence and more than half-decade period of supervision have been sufficient. The Section 3553(a) factors do not suggest that the remainder of Mr. Carter's term of supervised release is necessary to ensure his transition into the community. As Mr. Carter put it, "[s]upervised release is a bridge from prison to becoming a productive citizen." Def.'s Mot. at 2. Given Mr. Carter's exceptional compliance with the terms of his release, the payment of his financial obligation to the Court, his steady employment, and the recommendation of the U.S. Probation Office, this Court agrees with Mr. Carter that he has "crossed over to productivity and… [is] ready." Def.'s Mot. at 2.

## IV. CONCLUSION

Because Mr. Carter meets the threshold requirements for an early termination of supervised release under 18 U.S.C. § 3583(e)(1), and because the relevant 18 U.S.C. § 3553(a) factors support an early termination, the Court will **GRANT** Mr. Carter's motion. A separate Order consistent with this Memorandum Opinion shall issue this date.

Date: September 21, 2023

                                                      Royce C. Lamberth
                                                     United States District Judge